RICHARD S. BACON et al.

v.

HUBERT DEVINNEY et al.

1. When a husband and wife both make payments to meet the dues of build-
ing association stock, standing in the name of the wife, the presumption is that
his payments were gifts to her, and a resulting trust in favor of the husband
because of his payments will not arise until this presumption is rebutted by
evidence sufficient to establish such a trust.

2. The heirs of a deceased wife have, as against her surviving husband, an
equity to have stock, pledged by her in her lifetime for the payment of a mort-
gage on her lands, applied to satisfy the mortgage before recourse is had to
the lands.

3. They have a right to require that her personal estate which comes to the
hands of her surviving husband, shall be applied to the payment of the wife's
debts, of which the wife's bond, secured by a mortgage on her lands, may be
one, before recourse is had to her lands.

4. An attempt to obtain the release of the stock from the pledge, so that the
mortgaged premises may be made primarily liable, will be restrained by in-
junction.

On bill and answer.

Sarah B. Devinney was, in her lifetime, the wife of the de-
fendant, Hubert Devinney, and sister of the complainants.   She
died intestate, and they filed this bill as her heirs-at-law.   The
bill alleges that prior to her marriage she was the owner, in her
own name, of two shares of stock of the Franklin Loan and
Building Association of Salem.   After her marriage she acquired

29

two more shares; that she had a trade and occupation, and worked at the same, and received the income for her own use and paid for the shares up to the time of her death from her own earnings. On the 23d day of September, 1885, she took title to a house and lot in Salem, by conveyance to her in fee-simple in her own name. She borrowed $700 from the building association, and on the 24th of September, 1885, she and her husband, Hubert Devinney, gave a bond to the association to secure the payment of $700 and interest thereon, and secured the payment of the bond by a mortgage (on the house and lot purchased by her) made by her and her husband to the building association.

At the time of obtaining the loan, Mrs. Devinney pledged, as collateral security for its payment, the four shares of stock of the association above named, according to the terms of the constitution and by-laws of the association, by which each member is entitled to borrow $200 for each share of stock which he may hold. The two shares of stock first purchased by Mrs. Devinney matured and were credited on the bond at the valuation of $200 each, leaving the balance still due on the bond $300. After this, on the 20th of October, 1891, Mrs. Devinney, while seized of the house and lot, died intestate, never having had any child of her marriage with the defendant, Hubert Devinney, and leaving her surviving her husband, and also three brothers, Richard S. Bacon, Joseph H. Bacon and Daniel D. Bacon, the complainants in this suit. These three brothers were her only heirs-at-law. The bill alleges that Mrs. Devinney, up to the time of her death, regularly met the monthly dues and interest on the stock out of her own earnings, and that after her death the complainants permitted her husband to occupy the premises and receive the rents, and that since the death of the wife he has paid the dues and interest, and has occupied the premises and received the rents. In October, 1896, Devinney applied to the board of directors of the building association, requesting them to assign the mortgage made by him and Mrs. Devinney, and now reduced to a principal sum of $300, to a person to be named by him, and thus released the stock held by the associa-

tion as collateral for the payment of the mortgage. The bill further states that the board of directors granted the request of Devinney and passed a resolution in accordance with his wish, and that they were about to transfer the mortgage unless restrained by this court. The complainants allege that the transfer with the purpose named would deprive them of the benefit of the pledge of the stock for the payment of the loan, and subject the real estate, which they have inherited from their sister, Mrs. Devinney, to the full payment of the remaining mortgage indebtedness, in violation of the scheme of loan and of the agreement under which it was made. The complainants claim that they are entitled to the benefit of this agreement and scheme of loan, and to the collateral pledged for the loan. They ask that the building association may be enjoined from making any assignment without the consent of the complainants.

The defendant, Hubert Devinney, is the only one who answers. His answer substantially admits the statements set forth in the bill, except that he denies that Mrs. Devinney always paid the monthly dues from her own separate funds, and he says that the dues thereon were, for the most part, paid by himself or with his earnings, from the time of their marriage up to the time of Sarah Devinney's death, on October 20th, 1891, and since that time the defendant says he paid all of the dues, and has paid the insurance, taxes and repairs on the property. The defendant further states that in 1874, just prior to their marriage, Sarah Devinney, then Sarah Bacon, took out three shares of stock in the association, and that he and his wife paid the dues on this stock until 1883, when one share was sold and the two other shares in 1886 were credited on the mortgage. The defendant alleges that he earned considerable sums of money from 1874 to 1886, and that he gave all his earnings to his wife to be applied to her housekeeping expenses and to the payment of the building association dues. He states that he had not made actual application to have the mortgage assigned, and that he had only made inquiry for that purpose, but he declares that in good faith such a transfer should be made, and that he will make a formal application for such transfer, unless restrained by this court from so doing.

*Mr. William T. Hilliard*, for the complainants.

*Mr. Jonathan W. Acton*, for the defendants.

GREY, V. C.

This cause has been presented on final hearing on bill and answer. There is but little variance between the allegations of the bill and those of the answer, the only matter of substance being the statement in the bill that the decedent, Mrs. Devinney, paid the dues &c. for the shares of the stock pledged, up to the time of her death, from her own earnings. The husband defendant denies that she always paid these dues from her own separate funds, and says they were for the most part paid by himself or with his earnings, up to the time of her death, and since that time he has paid them all, and also the insurance, taxes and repairs of the property. So far as the answer denies the allegations of the bill it must be taken at this hearing to be true. The defendant does not deny the statement in the bill that since his wife's death he has had the use of the property without paying any rent.

It nowhere appears in the bill or answer that the defendant supposed, believed or understood that Mrs. Devinney, in receiving title to the lands in her own name, was acting in bad faith toward him, or that he had any agreement with her, or that he had given any direction to her that she should hold this title for his use. He joined in the making of the bond and mortgage, and he must thereby have had actual knowledge that the title to the premises stood in Mrs. Devinney's name and not in his. The law casts upon him knowledge of the fact that when the title stood in her name, and there were no children of the marriage, it would, upon her decease intestate, descend to her heirs-at-law, and nothing in the answer shows that he had any other expectation. What he seeks by his answer is not to have the title to the premises declared to have been mistakenly conveyed to his wife, or to have been conveyed to her in trust for him, but a decree that the stock which had been pledged by the assent of himself and of his wife in her lifetime to the asso-

ciation for the payment of a mortgage debt, may be permitted to be diverted, and by the plan set out in the bill, changed from the pledge made of it by the parties at the time of the original agreement. The substantial facts set forth in the bill are not disputed in the answer. The denial goes only to refute the statement that Mrs. Devinney paid for all the dues and interest out of her own separate estate, and to declare that the defendant, Hubert Devinney, in great part, paid for the dues and interest on the stock, but there is no denial that in making these payments the defendant, Hubert Devinney, knew that they were relieving the title standing in the name of his wife from the charge of the mortgage debt.

The admissions in the pleadings show that the husband and wife arranged that this title to the lands should stand in the name of the wife, and the funds of both were used indiscriminately to pay off the principal and interest of the mortgage debt, without any understanding or agreement that the payments of the husband should secure to him any rights in the property. The answer, in stating the disposition he made of his earnings, admits that he "always gave all his earnings to his wife, to be applied to her housekeeping expenses and to be applied to the payment of the building association dues." This is not the language which would be used if the statement was intended to indicate that the moneys were paid on an understanding or belief that a trust for his benefit was to arise from their payment. He knew this money would aid to relieve his wife's land of the charge of the mortgage, and he gave it to her for that purpose.

Under these indefinite circumstances, when the husband made some payments out of his separate estate, and the wife some out of hers, and there is no evidence that the money was paid on any agreement or belief that the husband was to be benefited, no trust arose in his favor, nor could he rightfully claim to be entitled, either at law or in equity, to any interest in the property, the title to which he knew stood in his wife's name when he made the payments. In cases where the parties stand in such intimate relationship to each other, the presumption is that the payments were intended to be a gift until by satisfactory proof

the contrary is established. If they had been strangers, the payments made by one and the title granted to another, with no explanatory circumstances attending the transaction, would raise a presumption of a resulting trust in favor of the person paying the consideration; but where the relations of the parties are those of husband and wife, or parent and child, the presumption is that the payment was a gift until overcome by proof. The proof necessary to overcome this presumption must be as satisfactory and explicit as that required to establish a resulting trust. *Peer* v. *Peer, 3 Stock. 432* ; *Reed* v. *Huff, 13 Stew. Eq. 233.*

At the time the stock was pledged, Mrs. Devinney was the holder not only of the title to the stock, but also of the title to the lands mortgaged. Her husband joined her in the bond and mortgage and obviously knew of the pledge of the stock. She had a right to dispose of this property in this way, and those who succeed to her rights in the stock and to the title to the lands receive what they get subject to such charge and disposition as she in her lifetime had made of them, respectively. The rights of her husband are to take the ownership of the stock subject to the pledge; the rights of her heirs-at-law are to take the ownership of the land subject to the mortgage and with the benefit of whatever contract touching the payment of the mortgage debt was outstanding and existent at the time of the death of the deceased. What is claimed by the defendant is the right, by the plan indicated in the bill (the purpose to carry which into effect is substantially admitted in the answer), to take away from the complainants the benefit of the bargain made by the decedent in her lifetime, by which the stock stood primarily pledged for the payment of the mortgage debt.

The principle controlling this case has been established in New Jersey in the court of errors in the case of *Herbert* v. *Mechanics' Building and Loan Association, 2 C. E. Gr. 497,* where a member of a building association had secured a loan by mortgage, and also by the assignment of ten shares of the stock, and subsequently conveyed the premises; judgments were afterwards recovered against the mortgagor, and the ten shares of stock were levied on. The court held that the equity which the

Bacon *v.* Devinney.

grantee of the mortgage had acquired as against the mortgagor and the association, to have the assets so marshaled that the debt due the association should be paid primarily out of the shares of stock, was not impaired or affected by the intervention of the judgment creditors; and it further held that the rights of the creditor who is entitled to have the assets of the debtor marshaled is absolute against the debtor himself, and cannot be taken away by the action of subsequent creditors.   The superior equity supported in the case cited was that of a grantee to have a mortgage subject to which he bought first satisfied out of shares of stock pledged with the mortgage as collateral security for the mortgage debt.   The right was sustained against creditors of the pledgor who had acquired a lien.   In the case in hand the heirs-at-law insist upon their right as against the administrator or surviving husband of the intestate who made the pledge.   In principle the equities in the case cited and that under consideration are the same.   The lien of the creditors' levy, in the case cited, gave them no more and no less rights than were outstanding in the pledgor, and the interest which the administrator took from his decedent pledgor, in the case now under consideration, was that which she held at the time of her death.   The administrator or executor takes subject to charges created by the pledgor decedent in his lifetime (*Glaholm* v. *Rowntree, 6 Ad. & E. \*710*), where the point was fully discussed in the king's bench on the question of the liability of executors to account for assets pledged by the testator.   In *Phillipsburgh Building Association* v. *Hawk, 12 C. E. Gr. 355*, stock pledged to secure a first mortgage was, as between the association and a second mortgage, applied to pay the first mortgage, before recourse was had to the land, and the levy of an execution against the pledgor's interest did not bar this equity.   So in *Sherron* v. *Acton, Assignee*, in this court—opinion filed January 6th, 1890, not reported—the same equity was supported in favor of a second mortgage, against an assignee for benefit of creditors.

But, accepting the right of the husband under an administration to take, *jure mariti*, the personal estate of his deceased intestate wife, he must apply these assets to the satisfaction of his

wife's debts, and he can take only the surplusage. What he gets on her death intestate, leaving assets, is a right to take her personal estate with a liability to account only to creditors. *Heard* v. *Stamford, 3 P. Wms.* \*410 ; *Kent Com.* \*145.

Even if there were not special pledge of this stock to pay the building association debt, it must be applied as a part of the intestate's personal property to pay her debts, of which the bond to the association is one. The personal estate of the decedent is the primary fund for the payment of debts. This is the common-law rule, and in our state it has been frequently enforced. The heir-at-law has enforced it against the executor. *Keene* v. *Munn,* 1 *C. E. Gr. 398; Krueger* v. *Ferry, 14 Stew. Eq. 432.*

The answer of the defendant admits that it is his purpose, and he claims his right, to procure the mortgage upon the complainant's property to be so transferred that the stock pledged for the payment of the same debt may be released, and thus to defeat the pledge of the stock made by the decedent, and make the land, and not the personal property, the primary fund out of which the debt of the decedent must be paid.

I will advise that the defendants be enjoined from this course, in accordance with the prayer of the complainant's bill.