EDWARD B. SUDBURY, appellant,

*v.*

THE MERCHANTVILLE BUILDING AND LOAN ASSOCIATION,
respondent.

[Filed October 11th, 1897.]

1. The holder of twenty-five shares of stock of a building and loan associa-
tion mortgaged certain premises thereto and pledged the stock as collateral.
The condition of the bond required the loan to be paid through monthly
payments of interest, dues and premiums, according to the by-laws, for such
period as would be required to mature the twenty-five shares. Subsequently
the borrower mortgaged the same premises to a third person. Afterwards the
association allowed the borrower to withdraw the twenty-five shares thereto-
fore pledged and substitute twenty-five shares of the current series, which were
then of little value, and paid him the withdrawal value of the shares first
pledged.—*Held*, that the substitution of the shares did not work a perform-
ance of the condition of the bond or a satisfaction of the association's mortgage.

2. The association was not required to reduce its demand by the amount of
the withdrawal value of the shares, unless it had notice of the second mort-
gage and the common security proved insufficient to pay both debts.

3. The mere fact that the borrower was a director of the association did not
charge it with knowledge of the second mortgage, since in the transaction he
was acting independently of the board and for himself individually.

On appeal from a decree advised by Vice-Chancellor Reed in
*Merchantville Building and Loan Association* v. *Zane*, who deliv-
ered the following opinion :

Sudbury v. Merchantville Building and Loan Ass'n.

The insistence made upon the part of Mr. Sudbury, the second mortgagee, is that the mortgage of the association is paid, and therefore his mortgages have precedence.

The way in which the mortgage of the association was paid, as it is insisted by the counsel of Mr. Sudbury, is this : The condition of the bond (to secure which the mortgage was given) was that the mortgagor should pay the principal, the interest and the premium at such times, in such places, as provided for by the constitution and by-laws of the association. The by-laws provide (section 7) that every member, for each share of stock held, shall be entitled to the loan of $200, and in section 6 that the premium paid for the prior right to a loan of $200, or the multiple thereof, shall be at a rate per share and shall be payable monthly by the stockholder borrowing.

Now, the point made is that, inasmuch as this loan of $5,000 was made originally to Zane by virtue of his holding the original twenty-five shares thereof, therefore the condition of the bond in respect to the payment of premiums, &c., refers to the premiums to be paid upon those shares. In connection with this insistence, it is also pointed out that the substitution of shares in the two instances mentioned, viz., on June 5th, 1894, and August 28th, 1895, were made upon applications for a loan, as if the loan of $5,000 was regarded as a new transaction, occurring at those dates and as made to Zane, as the holder of the new series of stock held by him at the times of the respective applications.

Inasmuch as the original shares have ceased to exist, and with their extinguishment has ceased the duty to pay the dues and premiums upon them, it is argued that the condition of the bond has not been broken, or rather has been performed and the mortgage satisfied.

I am unable to assent to this proposition. A part of the scheme provided by the by-laws of this association, like that of all such organizations, was to enable the shareholder to receive in anticipation the matured value of his shares. The loan so received it was expected would be paid by the application to it

of the value of the shares, when the value of each should amount to $200. The language of the condition in the bond was employed in view of this well-understood purpose. The $5,000 was to be paid through the monthly payments of interest, dues and premiums for such period as would be required to mature twenty-five shares of stock. The substantial feature of the condition was that the mortgagor should have the right to pay by the application of the matured shares. The shares upon which the payments were to be made were originally the ten shares of the seventh series and fifteen shares of the eighth series. When, however, on June 5th, 1893, the association consented to release the original shares and accept others in their stead, thereafter the condition in the bond, by the very quality of the transaction, required the payment of the interest, premiums and dues upon the new shares until they matured. The same consequence followed the second substitution. The condition thereafter required the payment of the interest and dues upon the shares in the fourteenth series until they became worth $200 each. There never was a performance of the condition of the bond nor a satisfaction of the mortgage.

But there is another question involved in the cause. This question is whether, as between the second mortgagee and the association, the former is entitled to have the withdrawal values of the shares released deducted from the amount due to the association. This query is not propounded upon the notion that the value of the shares was to be applied as *pro tanto* payment of the mortgage, for it is entirely settled that payment of dues upon the stock is not a payment upon the mortgage debt, and does not, *ipso facto*, work an extinguishment *pro tanto* of the mortgage. *2 Encycl. L. 639; Mechanics' Building and Loan Association v. Conover et al., 1 McCart. 219; 2 C. E. Gr. 497; Hoboken Building and Loan Association v. Martin, 2 Beas. 428; Somerset County Building and Loan Association v. Vandervere, 3 Stock. 382; State, Washington Building and Loan Association, pros., v. Hornbacker, 13 Vr. 635.*

The question is one involving the doctrine of marshaling.

Sudbury v. Merchantville Building and Loan Ass'n.

The position of the parties at the time of the release of the shares was this : The association held the first mortgage, with the subsequently-released shares as collateral security, the defendant holding a second mortgage. Here, then, was the association, the older creditor, holding two securities, viz., the mortgaged premises and the shares of stock, and a second mortgagee, the junior creditor, with a lien upon the mortgaged premises alone. The right of the latter to demand of the former that he should apply the security peculiar to himself was clear, and the rule seems equally clear that if the older creditor, having knowledge of the junior encumbrance, released his peculiar security, he ran the risk of having its value charged against him, if the common security is insufficient to pay both debts. *Reilly* v. *Mayer, 1 Beas. 55 ; Washington Building and Loan Association* v. *Beaghen et al., 12 C. E. Gr. 99.*

But the junior encumbrancer can successfully complain only when it appears that the security was released after the older creditor had notice of the existence of the junior encumbrance. There is nothing to prove that the association was chargeable, at the time of the substitution of the shares, with knowledge of the existence of the mortgages to Sudbury. Zane himself was a director, and he of course had notice as the maker of the subsequent mortgages, but he took no part, as a director, in the transaction of which the substitutions were a part. In these transactions he was acting independently of the board—he was acting for himself, and the other directors were acting for the association. He was asking of the association that they should pay him the value of the shares which he individually held Knowledge of his private transactions cannot under these circumstances be imputed to the association. *First National Bank of Hightstown* v. *Christopher, 11 Vr. 435.*

I will advise a decree for the complainant.

*Mr. Thomas E. French,* for the appellant.

*Mr. Martin V. Bergen,* for the respondent.

Gerli v. Macfarlane.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, HENDRICKSON, VREDEN-BURGH—8.

*For reversal*—COLLINS, DIXON, BOGERT, NIXON—4.