COMMONWEALTH-MERCHANTS TRUST COMPANY, formerly Commonwealth Trust Company, a corporation, &c., et al., complainants,

*v.*

ROSE SEGLIE, &c., et al., defendants.

[Decided April 1st, 1940.]

*Messrs. Burke, Sheridan & Hourigan,* for the complainants.

*Mr. Bernard Solomon,* for the defendants Rose and George Forrest.

*Messrs. Homan, Buchanan & Smith,* for Edward L. Whelan, clerk, guardian *ad litem.*

*Mr. John Meehan,* for the defendant Alice Seglie.

EGAN, V. C.

The complainants seek a construction of the will of Paul Seglie, who died February 3d, 1938. The testament is dated January 5th, 1932, and it was admitted to probate by the surrogate of Hudson county on February 15th, 1936. The complainants' account as executors was passed by the Orphans Court of Hudson county on May 26th, 1939.

The first paragraph of the will provides:

"I direct that my just debts and funeral expenses be paid as soon after my decease as may be conveniently done."

The second paragraph of the will contains the following clauses:

"To collect and receive all the rents, interest, profits and issues of my said property and estate and to pay the net income received therefrom to my beloved wife, CLOTILDE SEGLIE, in regular quarter-yearly payments, for and during the period of her natural life.

"In the event that the net income from my said property and estate should at any time be insufficient to properly provide for and maintain my said beloved wife in the manner in which she has been accustomed to live, I authorize and direct my Executors and Trustees hereinafter named to use any part of the principal of my said property and estate that may be necessary for such purpose, the comfort and welfare of said beloved wife to be their sole consideration in such a situation.

"I also give, devise and bequeath unto my said beloved wife, CLOTILDE SEGLIE, the right to use, occupy and enjoy, during the period of her natural life, free of any charge whatsoever, my homestead property known and designated as numbers 302 and 304 Mountain Road, Union City, Hudson County, New Jersey, including the double house and garage and including all of the land having a frontage of about one hundred and fourteen (114) feet on Mountain Road, together with the entire contents thereof, including my automobiles."

The trust consists of real estate, securities and cash of the value of approximately $125,000. It yields an annual net income of $5,000. The net income has been paid to the decedent's wife, Clotilde Seglie.

The Transfer Inheritance Tax Bureau of the State of New Jersey determined the net value of the estate at $140,925.68. It has fixed the present value of the widow's interest in the above sum at $54,672.09. The remainder of the estate is

valued at $86,253.59. If assessed at the taxable rate, the assessment would amount to $6,900.29. However, the tax bureau has suggested a compromise based upon the immediate payment of the sum of $5,175.22.

Complainants have the alternative of filing a surety bond with the Transfer Inheritance Tax Bureau in double the amount of the tax chargeable. The cost of such bond for a three year period would be approximately $207. In procuring such a bond, the surety company requires a deposit of collateral having a market value of seven or eight thousand dollars. The Inheritance Tax Bureau has assessed a direct tax of $543.44. The complainants have paid to the State of New Jersey the sum of $1,500; but they have not yet allocated the direct tax of $543.44 against *corpus*.

The third paragraph of the will provides for the distribution of the decedent's estate after the death of his widow, Clotilde Seglie, and directs:

"(a) I give, devise and bequeath unto my beloved nieces, Rose Seglie and Alice Seglie, daughters of my brother Joseph Seglie, of Union City, Hudson County, New Jersey, the premises known and designated as numbers 302 and 304 Mountain Road, Union City, Hudson County, New Jersey, including the double house and garage and all of the land, having a frontage of about one hundred and fourteen (114) feet on Mountain Road, together with the entire contents thereof, including my automobiles and all of my jewelry, to have and to hold the same unto themselves, their heirs, executors, administrators and assigns absolutely and forever."

In the division of the residuary estate remaining upon the termination of the trust, the testator made the following provision:

"(h) All the rest, residue and remainder of my property and estate, I give, devise and bequeath as follows, to wit:
"FORTY PERCENTUM (40%) thereof, I give, devise and bequeath unto my aforesaid beloved nieces, Rose Seglie, and Alice Seglie, children of my brother Joseph Seglie of Union City, Hudson County, New Jersey, in equal shares, share and share alike."

Rose Seglie is now the wife of the defendant, George Forrest, whom she married after the execution of decedent's will. They, Rose and George, hold a $5,000 bond and mortgage,

made by the decedent and his wife, Clotilde Seglie, covering the said premises, 302-304 Mountain Road, Union City, New Jersey. They ask that the principal of their bond and mortgage be paid out of the personal estate of the decedent. They have been paid the interest due on the principal of their mortgage.

The following are the questions involved herein:

1. What is the nature of the estate in which Clotilde Seglie takes in the remainder of the decedent's estate under the third paragraph of the second article of the decedent's will?

2. To what extent may Clotilde Seglie invade the *corpus* of the remainder under the third paragraph of the second article in the decedent's will?

3. The complainants seek the approval of the court in charging the direct tax assessed against Clotilde Seglie by the Transfer Inheritance Tax Bureau against the *corpus* of the decedent's estate.

4. The complainants seek the instruction and advice of the court in connection with the compromise tax suggested by the Transfer Inheritance Tax Bureau of the State of New Jersey.

5. What is the nature of the estate which the remaindermen take under the third paragraph of the decedent's will?

6. Are Alice and Rose Seglie entitled to exoneration of the bond and mortgage held by Rose Seglie Forrest and George Forrest covering the property which is devised to them in remainder under paragraph "a" of the third article of the decedent's will?

The decedent's intention to create a life interest in his wife, Clotilde Seglie, plus a contingent interest in the *corpus* of the remainder, is expressed in language that is clear, and free from ambiguity in the second article of his will.

In the same paragraph of the will the decedent devises his entire estate to his executors and trustees to be held in trust by them. He also directs that the net income shall be paid to his wife for and during the period of her life. He provides that in the event the income from the estate is insufficient to properly provide for his wife in the manner in which she has been accustomed to live, then the trustees shall use such

part of the principal as may be necessary for such purpose—her "comfort and welfare * * * to be their sole consideration."

The gift over of the remainder under the third paragraph of the will leaves no doubt that the testator intended that his wife was not to have the fee to the homestead. Her interest in it is for the period of her life only.

In the event that the estate's income be insufficient to maintain decedent's wife in the comfort to which she had been accustomed, then the executors and trustees are given discretionary power to use any part of the principal of the estate as may be necessary for the purpose. Such discretionary power the courts refrain from interfering with. They hold that such interference would, in effect, be substituting their judgments for those of the trustees. Unless there is an abuse of discretion, or a betrayal of trust, or a display of bad faith by the trustees, the courts will not interfere with discretionary powers vested in trustees. *Tansey* v. *New Brunswick Trust Co., 124 N. J. Eq. 558; 3 Atl. Rep. (2d) 575; New Jersey Title Guarantee and Trust Co.* v. *Dailey, 123 N. J. Eq. 205; 196 Atl. Rep. 703; Fidelity Union Trust Co.* v. *Dignan, 105 N. J. Eq. 750; 146 Atl. Rep. 466; Coffin* v. *Watson, 78 N. J. Eq. 307; 79 Atl. Rep. 275.*

In the instant case the authority given to the trustees to use and pay over to Clotilde Seglie any part of the *corpus* of decedent's estate is final and exclusive. Their discretion in the circumstances will not be interfered with.

The Transfer Inheritance Tax Bureau having estimated that the widow's interest has a present value of $54,672.09, upon which the tax due is $543.44, I believe that the tax is properly payable from the *corpus* of the estate and not out of the income. The executors and trustees are so instructed. *In re Diehl, 88 N. J. Eq. 310; 102 Atl. Rep. 738; affirmed, 89 N. J. Eq. 209; 103 Atl. Rep. 822; Rice* v. *Gould, 112 N. J. Eq. 379; 164 Atl. Rep. 41; Gates* v. *Plainfield Trust Co., 121 N. J. Eq. 460; 191 Atl. Rep. 304; affirmed, 122 N. J. Eq. 366; 194 Atl. Rep. 65.*

The Transfer Inheritance Tax Bureau compromise of $5,175.22, suggested by the tax bureau, in my opinion favors

the decedent's estate. The trustees, therefore, are directed to pay the amount of the compromise to the Transfer Inheritance Tax Bureau.

Under the third article of the will the remaindermen have a vested estate which is subject to be divested to the extent that the *corpus* may be invaded by the life tenant during her lifetime. The courts follow the rule that a devise of a remainder limited upon a particular estate, determinable on an event which must necessarily happen, will be construed as vesting the remainder estate at the time of the death of the testator. The happening of the event merely postpones the enjoyment of the estate. *Howell* v. *Green, 31 N. J. Law 570; Van Dyke's Adm'rs* v. *Vanderpool's Adm'r, 14 N. J. Eq. 198; Beatty's Adm'r* v. *Montgomery's Ex'x, 21 N. J. Eq. 324; Post* v. *Herbert's Ex'rs, 27 N. J. Eq. 540; Barnes Cycle Co.* v. *Haines, 69 N. J. Eq. 651; 61 Atl. Rep. 515; Clement* v. *Creveling, 83 N. J. Eq. 318; 91 Atl. Rep. 89; Lorillard* v. *Kent, 99 N. J. Eq. 509; 133 Atl. Rep. 881.*

Rose Forrest contends that the mortgage covering the decedent's homestead, 302-304 Mountain Road, Union City, should be paid and satisfied from the personal estate of the decedent. That contention would undoubtedly have been sustained at common law where the heir or devisee had the right to demand of the executor or administrator the discharge of mortgages, or other liens, upon lands which they inherit, out of the personal estate of the testator. But the legislature of this state, in 1924, changed the common law rule. The change was carried into the 1937 Revision and is known as *R. S. 5:26A-1;* it reads as follows:

"3:26A-1. Descent or devise of mortgaged real estate; no exoneration. When real estate subject to a mortgage descends to an heir or passes to a devisee, such heir or devisee shall not be entitled to have such mortgage discharged out of the personalty or any other real estate of the ancestor or testator, but such real estate so received by him shall be primarily liable for the mortgage debt, unless the will of the testator shall expressly or impliedly direct that the mortgage be otherwise paid."

That quoted provision of the statute abrogates the common law right of an heir or devisee to exoneration unless the will

of the testator shall expressly or impliedly direct that the mortgage be otherwise paid. The decedent died in 1938.

The will neither expressly nor impliedly gives any indication of the testator's intention as to the manner, or the fund from which the principal of the mortgage should be paid. The evidence submitted at the hearing does not favor the contentions of Rose Forrest; it gives no clear indication of the decedent's position in the matter. *Swetland* v. *Swetland, 100 N. J. Eq. 196; 134 Atl. Rep. 822.* In the *Swetland Case,* it will be noted that the direction in the first paragraph of the will of the testator, Horace M. Swetland, is substantially the same as the first paragraph of the will of the decedent in the instant case, to wit:

"First: I direct that all my just debts and funeral expenses be paid, except business obligations, which may be carried at the discretion of my executors."

Vice-Chancellor Berry in the *Swetland Case* did not feel that the inclusion of this purely formal customary direction to pay decedent's debts was sufficient to overcome the provisions of the 1924 statute.

I feel that Rose Forrest and Alice Seglie take the homestead property subject to the lien of the existing mortgage pursuant to the above quoted provisions of the 1937 legislative enactment.

Rose Forrest, in support of her contention, relies upon the following cases: *Wooster* v. *Cooper, 53 N. J. Eq. 682; 33 Atl. Rep. 1050; DuBois* v. *Waterman, 87 N. J. Eq. 119; 99 Atl. Rep. 143; Long* v. *Katzenbach, Attorney-General, 3 N. J. Mis. R. 29; 128 Atl. Rep. 600; Smith* v. *Field, 98 N. J. Eq. 532; 131 Atl. Rep. 521.* An examination of those cases discloses their facts to be somewhat different from those in the instant case. She argues that the provisions of *R. S. 3:26A-1* do not apply to her mortgage. She says the case of *Oystermen's National Bank of Sayville* v. *Edwards, 112 N. J. Eq. 148; 163 Atl. Rep. 445,* favors her position. In that case the provisions of *R. S. 3:26A-1* were not considered and the points therein enacted were not raised. She further relies upon the case of *Deichman* v. *Arndt, 49 N. J. Eq. 106; 22 Atl. Rep. 799.* The *Deichman Case* was decided in 1891,

at the time when the doctrine of exoneration was in effect in New Jersey.

I am satisfied that the provisions of *R. S. 3:26A-1,* as above stated, are controlling in the instant case. I shall advise an order to conform with the above determinations.